UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

OSWALD MBUYISENI MTSHALI,                  :

                    Plaintiff,             :
                                                    05 Civ. 358 (PAC)(HBP)
      -against-                            :

                                                    REPORT AND
NEW YORK CITY COLLEGE OF             :      RECOMMENDATION
TECHNOLOGY, FRED BEAUFAIT,
STEVEN PANFORD,                            :

                    Defendants.            :

----------------------------------X

            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE PAUL A. CROTTY, United States

District Judge,


I.   Introduction


            Plaintiff brings this action pro se pursuant to 42

U.S.C. § 1983 alleging that defendants violated his First Amend-

ment rights by refusing to promote him to a tenure-track Assis-

tant Professor position in retaliation for his views regarding

the Iraq war.[1]  Defendants move for summary judgment dismissing

---

[1]Plaintiff initially asserted claims pursuant to Title VII
of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.
("Title VII") and the Age Discrimination in Employment Act, 29
U.S.C. §§ 621 et seq. ("ADEA"), in addition to his Section 1983
claims.  On October 3, 2006 Your Honor dismissed plaintiff's
Title VII and ADEA claims with respect to all defendants, and
plaintiff's § 1983 damages claim against New York City College of
Technology.  Hence, plaintiff's only remaining claims are his
                                             (continued...)

plaintiff's remaining claims.  For the reasons set forth below, I respectfully recommend that the motion be granted and the action dismissed.

II.  <u>Facts</u>

     A.  <u>Background Facts</u>

        1.  Defendants' Hiring
           <u>of Assistant Professors</u>

     From 2000 to 2003, plaintiff was a non-tenured adjunct professor of Literature in the Department of African-American Studies at New York City College of Technology (the "College"), which is a senior college[2] within the City University of New York ("CUNY") system (Defendants' Local Civil Rule 56.1 Statement ("Deft. Stmnt."), Docket Item 40, at ¶ 1).  After the resignation of a tenured Assistant Professor of African American Literature, plaintiff taught that professor's courses on a substitute basis for the 2002-2003 academic year (Deft. Stmnt. at ¶ 2; Plaintiff's Deposition taken on March 28, 2007 ("Pl. Dep."), annexed as Ex. A

_____

    [1](...continued)
Section 1983 claims against the individual defendants (Memorandum and Order, dated Oct. 3, 2006, Docket Item 32).

    [2]<u>See</u> N.Y. Educ. Law § 6202(5) ("The term 'senior college' shall mean an institution of higher education in the city of New York, which is governed and administered by the board of trustees, including, but not limited to . . . New York city college of technology (formerly known as 'New York city technical college' and 'New York city community college') . . . .").

to Declaration of Aron Fischer, dated May 18, 2007 ("Fischer Decl."), at 57-58).

In early 2003 the College's African-American Studies Department obtained approval to hire two tenure-track Assistant Professors of Literature for the 2003-2004 academic year, and the Department's appointment committee commenced a search for applicants (Deft. Stmnt. at ¶¶ 5, 6). Dr. Steve Panford, Chairman of the African-American Studies Department, suggested to plaintiff that he apply for the position (Pl. Dep. at 64). Plaintiff applied for the Assistant Professor position with the understanding that once the position was filled, his substitute position would be eliminated (Pl. Dep. at 65).

Defendants also sought applications from the public (Deft. Stmnt. at ¶ 6). Defendants' job announcement stated that the position required "an appropriate earned doctorate, research experience and interest, college level teaching experience. Competence to teach African American literature, African Literature, and Caribbean Literature. Expertise in curriculum development, instructional technology and innovative pedagogy is desirable" (Position Announcement, annexed as Ex. C to the Declaration of Steve Panford, dated May 17, 2007 ("Panford Decl.")). In January, 2003 defendants interviewed several applicants for the two positions (Interview Schedule, annexed as Ex. E to Panford Decl.). In March, 2003 Panford recommended three finalists --

3

plaintiff, Dr. Marta Effinger and Dr. Stephen James -- for the
two Assistant Professor positions.  Annette Schaefer, the Dean of
the School of Arts and Sciences, then interviewed the finalists
(Declaration of Annette Schaefer, executed May 15, 2007,
("Schaefer Decl.") at ¶ 6; Panford Decl. at ¶¶ 9, 10).  According
to plaintiff, after his interview with Schaefer, Panford told
plaintiff that Schaefer "was very pleased with [him]" (Pl. Dep.
at 66-67) and that plaintiff had received excellent reviews from
students and other faculty members who had observed his teaching
(Pl. Dep. at 69-73).

     According to Schaefer, after she interviewed and
reviewed the applications of the three finalists, she selected
Effinger and James as the two most qualified candidates.
Schaefer stated that her decision was based entirely on the
applicants' qualifications and that she was not aware of plain-
tiff's views regarding the war in Iraq when she made her decision
(Schaefer Decl. at ¶¶ 8-11).  Schaefer states she felt that
Effinger and James were more qualified than plaintiff because
Effinger and James both had doctorates in literary disciplines,
whereas plaintiff has an education doctorate ("Ed.D.") in Applied
Linguistics.  Schaefer states that "[a]n Ed.D. is less 'appropri-
ate' for the position of Assistant Professor of African American
Literature than . . . a literature Ph.D . . . because a litera-
ture Ph.D. reflects research and study in the discipline of

literature, whereas an Ed.D. reflects research and study in the discipline of education" (Schaefer Decl. at ¶ 8).  Schaefer also believed Effinger and James were more qualified than plaintiff because they had more "'research experience and interest'" (Schaefer Decl. at ¶ 8 <u>quoting</u> the Position Announcement). Unlike plaintiff, Effinger had several peer-reviewed publications in recent years, and James had numerous on-going research pro- jects (Schaefer Decl. at ¶ 8 <u>citing</u> Curricula Vitae of Effinger, James & Plaintiff, annexed respectively as Exs. G, H & I to Panford Decl.).  Panford wrote to Effinger and James on April 8, 2003 to inform them that they had been selected for the Assistant Professor of Literature positions (Panford Decl. at ¶ 12; Letter from Dr. Panford to Marta Effinger, annexed as Ex. K to Schaefer Decl.; Letter from Dr. Panford to Stephen James, dated April 8, 2003, annexed as Ex. J to Schaefer Decl.).

> 2.  Plaintiff's Speech and
>     <u>Rejection from the Position</u>

Plaintiff states that in June of 2003 he had a conver- sation with two other faculty members, Brendon Rosser and Carolyn Jones, regarding the Iraq war and a debate between Harry Belafonte and Secretary of State Colin Powell.  During this conversation plaintiff expressed his support for the war and for

Powell (Pl. Dep. at 89-95).[3]  Plaintiff states that soon after
this conversation, Panford told him that he "would not be consid-
ered or promoted to a tenure tract position because [he] sup-
ported the war in Iraq which was opposed by all members of the
Department and beyond" (Am. Compl. ¶ 8; see also Letter from
Plaintiff to the American Civil Liberties Union ("ACLU"), dated
June 12, 2003, ("Plaintiff's Letter to the ACLU"), annexed as an
unnumbered Exhibit to the Amended Complaint ("Am. Compl."),
Docket Item 4 ("[Panford] told me that the only reason for
disqualifying me for the post is that I had said negative things
in conversation with two colleague[s].")).  Plaintiff testified
at his deposition that he never expressed his views on the war to
anyone else until his June, 2003 conversation with Rosser and
Jones (Pl. Dep. at 98).

---

[3]While none of plaintiff's submissions to the Court
discloses the date of plaintiff's conversation about the Iraq war
with Rosser and Jones, plaintiff disclosed the date in a letter
that his former counsel sent to defendant Fred Beaufait, who was
then President of the College.  That letter states that plaintiff
was still being considered for the full time professor position
when, "in June of 2003, [plaintiff] became involved in a
discussion with other faculty members about Secretary of State
Colin Powell and the war in Iraq" (Letter from Andrea Rachiele to
Fred W. Beaufait, dated Nov. 7, 2003, ("Rachiele Letter"),
annexed as Ex. B to Fischer Decl.).  Upon reviewing this letter
at his deposition, plaintiff confirmed that the letter was
correct and that the conversation with Rosser and Jones had
occurred in June, 2003 (Pl. Dep. at 89-95).

B.  <u>Procedural History</u>

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on August 5, 2004 (<u>see</u> Am. Compl. ¶ 10 and unnumbered Exhibit annexed thereto).  On plaintiff's EEOC Form, he checked the box indicating that he was alleging "retaliation" and "other" discrimination (Am. Compl. unnumbered Exhibit).  Plaintiff attached to his EEOC charge a copy of his June 12, 2003 letter to the ACLU requesting legal representation in which he alleged that defendants fired him because of his views on the Iraq war (Plaintiff's Letter to the ACLU).

The EEOC dismissed the charge on August 10, 2004 on the grounds that (1) plaintiff's "expressions of [his] political views are not protected activities covered by the EEO law," and (2) plaintiff's EEOC charge was untimely (Letter from William Lai, Supervisory EEOC Investigator, to Plaintiff dated August 10, 2004, annexed to Am. Compl.).  Attached to Lai's letter was a copy of the EEOC's "Dismissal and Notice of Rights" to plaintiff dated August 10, 2004 (Am. Compl. unnumbered Exhibit).

Plaintiff commenced this action by delivering his original complaint to the Pro Se Clerk's Office on October 4, 2004 (Docket Item 2).  By Order dated January 13, 2005, the Honorable Michael B. Mukasey, former United States District Judge, found that plaintiff's original complaint did not satisfy

the requirements of Fed.R.Civ.P. 8 and directed plaintiff to file an amended complaint (Docket Item 3).  Plaintiff filed an amended complaint on February 4, 2005, to which he appended copies of his EEOC charge and his letter to the ACLU (Docket Item 4).

On October 27, 2005, all defendants moved to dismiss the complaint pursuant to subparagraphs (1), (5) and (6) of Federal Rule of Civil Procedure 12 (Docket Item 17).  I issued a report and recommendations on defendants' motion, concluding that defendants' motion should be granted in part and denied in part. Specifically, I recommended that all of plaintiff's claims be dismissed except for his Section 1983 claim against defendants Beaufait and Panford in their individual capacities.  I further recommended that plaintiff be permitted to replead his Section 1983 claim seeking injunctive relief against CUNY and his Title VII and ADEA claims with respect to any adverse employment actions that might have occurred within the 300-day period prior to plaintiff's purportedly filing an administrative charge with the New York State Division of Human Rights or the New York City Commission on Human Rights (June 27, 2006 Report and Recommendations, Docket Item 27).

Defendants objected to those aspects of my report and recommendation that would have permitted plaintiff to replead (Defendants' Memorandum of Law in Support of Objections to Report and Recommendation, Docket Item 30).  Plaintiff filed no objec-

tions.  On October 3, 2006, Your Honor issued a Memorandum
Opinion and Order, which dismissed, with prejudice, all of
plaintiff's ADEA claims, his Title VII claims against the indi-
vidual defendants, his Title VII claims against CUNY based on
adverse employment actions after May of 2003, and his Section
1983 claims against CUNY.  Your Honor also dismissed, without
prejudice, plaintiff's Title VII claims against CUNY relating to
adverse employment actions prior to May, 2003, on the condition
that plaintiff produce the administrative charge he allegedly
filed with the New York State Division of Human Rights or the New
York City Commission on Human Rights.  Hence, the only claims
remaining after Your Honor's decision were plaintiff's Section
1983 damages claim against the individual defendants in their
individual capacity and his Section 1983 claim for injunctive
relief against the individual defendants in their official
capacities (Oct. 3, 2006 Memorandum Opinion and Order, Docket
Item 32).  Plaintiff never replead any of the claims dismissed
without prejudice.

III.  <u>Analysis</u>

    A.  <u>Summary Judgment Standard</u>

        The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of [his] case -- one on which [he] has the burden of proof -- exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This form of remedy is inappropri-ate when the issue to be resolved is both genuine and related to a disputed material fact. An alleged fac-tual dispute regarding immaterial or minor facts be-tween the parties will not defeat an otherwise properly supported motion for summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990). Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993). If the nonmovant fails to meet this burden, summary judgment will be granted against it.

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223-24 (2d Cir. 1994). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. . . . In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor

of, the non-movant . . . .  Stated more succinctly, '[t]he
evidence of the non-movant is to be believed.'"  Lucente v. Int'l
Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002) (citations
omitted); accord Jeffreys v. City of New York, supra, 426 F.3d at
553 ("Assessments of credibility and choices between conflicting
versions of the events are matters for the jury, not for the
court on summary judgment."); see also Make the Road by Walking,
Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aero-
space, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).
In the summary judgment context, "[w]here the non-moving party is
proceeding pro se, the court must interpret that party's support-
ing papers liberally, that is, interpret them 'to raise the
strongest arguments that they suggest.'"  Forsyth v. Fed'n
Employment & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005),
quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see
also Haines v. Kerner, 404 U.S. 519, 520 (1972); Graham v.
Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

          In accordance with Local Rule 56.2, defendants served
plaintiff with a "Notice To Pro Se Litigant Who Opposes a Motion
For Summary Judgment" (Docket Item 42).  Plaintiff has not filed
any opposition to defendants' summary judgment motion.  Plaintiff
did, however, submit what appears to be his opposition directly
to defendants' counsel, Aron Fischer (Attachment to Letter from
Aron Fischer, Esq. to the Court, dated August 20, 2007 ("Pl.

11

Opp.")).  Fischer has provided those documents to the Court, and
I have considered them in resolving defendants' motion.

    B.  Defendants' Motion
        for Summary Judgment

        Defendants argue plaintiff's First Amendment claims
should be dismissed on two grounds:  (1) that plaintiff cannot
establish a _prima_ _facie_ case of First Amendment retaliation
because he cannot show a causal relationship between his speech
and defendants' hiring decision, and (2) that defendants would
not have hired plaintiff for the Assistant Professor position
irrespective of plaintiff's views on the Iraq War.[4]

        A public employee's First-Amendment-retaliation claim
has three elements:

> A public employee who makes a First Amendment
> claim of employment retaliation under § 1983 must show
> that:  (1) his speech addressed a matter of public
> concern, (2) he suffered an adverse employment deci-
> sion, and (3) a causal connection exists between his
> speech and that adverse employment decision, so that it
> can be said that the plaintiff's speech was a motivat-
> ing factor in the adverse employment action.  Morris v.
> Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  Even if the
> plaintiff establishes these three elements, his claim
> remains subject to several defenses.  First, the state

_____

        [4]Defendants do not, for purposes of summary judgment,
dispute that plaintiff has made a sufficient showing regarding
the first two elements of a First Amendment retaliation claim,
namely that plaintiff's alleged remarks regarding the Iraq war
are constitutionally protected speech and that his rejection for
the Assistant Professor position is an adverse employment action
(Deft. Mem. at 4).

may defend its actions by showing the employee's speech disrupted the workplace.  Rankin, 483 U.S. at 388, 107 S.Ct. 2891; see Connick v. Myers, 461 U.S. 138, 151-52, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  To prevail with this defense the public employer must demonstrate that its interest in promoting an efficient workplace out-weighs the employee's interest in commenting on matters of public concern.  Connick, 461 U.S. at 140, 103 S.Ct. 1684.  Also, the employer may avoid liability by demon-strating that it would have taken the same adverse employment action "even in the absence of the protected conduct."  Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162-63 (2d Cir. 2006), cert. denied, 127 S.Ct. 382 (2006); see also Reuland v. Hynes, 460 F.3d 409, 415-16 (2d Cir. 2006); Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 251-52 (2d Cir. 2006).

Although plaintiff alleges that he was denied the Assistant Professor position because of his views on the Iraq war, plaintiff's admissions and defendants' documentary evidence establish that plaintiff did not express his opinion about the Iraq war until after defendants made their hiring decisions. Plaintiff's former counsel wrote to the former president of the College and stated that plaintiff's conversation with other faculty about the war occurred in June of 2003 (Rachiele Letter at 2).  Plaintiff confirmed at his deposition that the letter was correct, and testified that the first time he expressed his views regarding the Iraq war was during the June, 2003 conversation with Rosser and Jones (Pl. Dep. at 89-90, 94-95, 98).  Thus,

plaintiff's own testimony establishes that he did not engage in the protected speech in issue until June of 2003.

Panford offered Effinger and James the Assistant Professor of Literature positions in letters dated April 8, 2003 (Panford Decl. at ¶ 12; Letter from Panford to Effinger, dated April 8, 2003, annexed as Ex. K to Panford Decl.; Letter from Panford to James, dated April 8, 2003, annexed as Ex. J to Panford Decl.).  Although plaintiff asserts that Panford informed him that he would not be hired for the position because of his views on the war, plaintiff has not controverted the evidence that Panford offered the two available positions to Effinger and James two months <u>before</u> plaintiff ever expressed his views on Iraq.

Since there is no dispute that defendants made the hiring decision in issue before plaintiff engaged in constitu- tionally protected speech, no reasonable fact-finder could conclude that defendants' decision was motivated by plaintiff's speech.  <u>See</u> <u>Grennan v. Nassau County</u>, 04 Civ. 2158 (DRH)(WDW), 2007 WL 952067 at *10 (E.D.N.Y. Mar. 29, 2007) ("[A]s a matter of logic, those actions that occurred before plaintiff's protected speech occurred cannot satisfy the causal connection."); <u>Carmellino v. Dist. 20 of New York City Dep't of Educ.</u>, 03 Civ. 5942 (PKC), 2006 WL 2583019 (S.D.N.Y. Sept. 6, 2006) ("To estab- lish a causal relationship between protected activity and adverse

employer conduct, a plaintiff must, at minimum, introduce evidence that the protected activity in question occurred before the adverse employment action.").

Although the foregoing discussion is sufficient to resolve the motion, I shall go on to consider defendants' alternative argument to minimize the possibility of a remand if Your Honor disagrees with the foregoing analysis.

Defendants argue that even if plaintiff were able to establish a prima facie case of First Amendment retaliation, plaintiff still cannot prevail on his claim because Effinger and James were more qualified for the position than he was, and defendants would have hired them over plaintiff irrespective of plaintiff's views on the war (Deft. Mem. at 7).

If a public employee establishes a prima facie case that his employer retaliated against him for the exercise of his First Amendment rights, "a defendant may avoid liability by showing 'by a preponderance of the evidence that it would have reached the same decision as to [the employment action] even in the absence of the protected conduct.'" Diesel v. Town of Lewisboro, supra, 232 F.3d at 107, quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, supra, 429 U.S. at 287.  Thus, even if plaintiff had made a showing of causation, his claim cannot survive summary judgment if the defendants met their burden of establishing that there is no genuine issue of fact

15

that they would have made the decision to hire Effinger and James, and not plaintiff, regardless of plaintiff's views on Iraq.  See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).

Schaefer asserts that she based her hiring decision solely on academic criteria and that she was not aware of plaintiff's views on the Iraq war when she made the decision (Schaefer Decl. at ¶¶ 10, 11).  According to Schaefer, Effinger and James were more qualified than plaintiff for the Assistant Professor position because they had earned literary Ph.D.s that are more apposite to the teaching of literature than plaintiff's Ed.D. (Schaefer Decl. at ¶ 8).  Schaefer also asserts that Effinger and James' curricula vitae, which included publications and research projects, demonstrated "far more extensive and current 'research experience and interest' than [plaintiff's]" (Schaefer Decl. at ¶ 8).  Specifically, between the years 1996 and 2002, Effinger had published three journal articles, two essays in biographical compilations, and a prizewinning play (Curriculum Vitae of Dr. Marta Effinger, annexed as Ex. G to Panford Decl.).  James was working on four research projects when he applied for the Assistant Professor position and, in 1998, had delivered a conference paper on Carribean literature.  In 1996 James had published a bibliography of African-American studies and prior to that, a volume of primary sources in African American history (Curriculum Vitae of Dr. Stephen James, annexed as Ex. H to Panford Decl.).

16

Plaintiff's publications included a "Writing Skills Manual for the American Studies Department" in 2002, and a "College Newsletter" in 2001.  Plaintiff's next most recent academic publication was in 1983 (Curriculum Vitae of Dr. Oswald Mbuyiseni Mtshali, annexed as Ex. I to Panford Decl.).  Though not listed on plaintiff's curriculum vitae, plaintiff was working on a book relating to the terrorist attacks of September 11, 2001.  However, plaintiff admitted at his deposition that when he interviewed for the Assistant Professor position,  Schaefer expressed concern that the book was not literary in nature (Pl. Dep. at 79-82).

Plaintiff contends that defendants have misrepresented his qualifications -- that his "discipline is applied linguistics from the Department of Language, Literature and Social Studies" from the Teachers College of Columbia University and that his doctorate is not in education (Plaintiff's May 29, 2007 Letter to the Court, annexed as an unnumbered Exhibit to Pl. Opp., at ¶ 4). A copy of plaintiff's curriculum vitae describes his doctorate as an "Ed.D." in Applied Linguistics (Ex. I to Panford Decl.). Copies of letters of recommendations and transcripts from Columbia University that plaintiff submitted also indicate that plaintiff has earned an Ed.D in Applied Linguistics (Unnumbered Exhibits to Pl. Opp.).  Thus, plaintiff's contention that defendants have misrepresented his qualifications is baseless.

The only other evidence presented in support of plaintiff's qualifications is his testimony that he received excellent evaluations while teaching at the College as an adjunct (Plaintiff's Letter to the ACLU, Pl. Dep at 69-73), as well as a copy of a published translation by plaintiff of Zulu folktales and untranslated print-outs from foreign-language websites that plaintiff submitted in support of his opposition to defendants' motion (unnumbered Exhibits to Pl. Opp.).

Academic decisions concerning personnel are entitled to deference when those decisions are not substantial departures from accepted academic norms:

> Universities are entitled to a degree of deference in the exercise of academic judgment. Boise I, 2003 WL 22390792, at *6 (citing Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985) ("When judges are asked to review the substance of a genuinely academic decision, . . . they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.")); accord Univ. of Penn. v. EEOC, 493 U.S. 182, 199 (1990) ("[C]ourts have stressed the importance of avoiding second-guessing of legitimate academic judgments."). "It is [the Court's] task . . . to steer a careful course between excessive intervention in the affairs of the university and the unwarranted tolerance of unlawful behavior." Powell v. Syracuse Univ., 580 F.2d 1150, 1154 (2d Cir. 1978); cf. Tripp v. Long Island Univ., 48 F. Supp.2d 220, 224 (E.D.N.Y. 1999), aff'd, 201 F.3d 432 (2d Cir. 1999) (holding that, where plaintiff student challenged defendant's exercise of academic judgment, conclusory allegations of discrimination without additional proof were insufficient to

sustain burden on summary judgment to prove intentional discrimination.

Boise v. New York Univ., 03 Civ. 5862 (RWS), 2005 WL 2899853 at *5 (S.D.N.Y. Nov. 3, 2005) aff'd 201 Fed. Appx. 796 (2d Cir. 2006).

Defendants have presented valid reasons for deciding to hire Effinger and James -- they possessed Ph.D.s in literature and had greater research and writing experience than plaintiff. Plaintiff, on the other hand, offers little to controvert defendants' assertion that he was less qualified than the other candidates. Plaintiff does not dispute that the doctoral degrees possessed by Effinger and James are more appropriate than his for teaching literature. Plaintiff also has not presented evidence sufficient to rebut defendants' evidence that Effinger and James' applications for the Assistant Professor position demonstrated greater research experience and interest than his. Defendants' decision to hire Effinger and James based on those candidates' qualities is an academic decision to which the Court should defer, where, as here, the record clearly shows the decision was reasonable. Since defendants have established that there is no genuine issue of fact that they hired Effinger and James because they were more qualified than plaintiff for the Assistant Profes-

19

sor positions, defendants are entitled to summary judgment on that ground as well.

IV.   <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that defendant's motion be granted and plaintiff's action dismissed in its entirety.

V.   <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report to file written objections.  <u>See also</u> Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States District Judge, 500 Pearl Street, Room 735, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO OBJECT WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir.

1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054

(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         February 26, 2008

                                    Respectfully submitted,


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies mailed to:

Dr. Oswald Mbuyiseni Mtshali
5803 Mziki Street
Zone 5, P.O. Pimville 1809
Soweto, South Africa

Aron Fischer, Esq.
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York, New York 10271-0332

21